UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6360-CR-DIMITROULEAS

UNITED STATES OF AMERICA )
)
)
v. )
)
)
ISMAEL ENG, )
)
            Defendant. )
_____)

FILED by _____ D.C.

MAR 30 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

### STIPULATED FACTUAL PROFFER FOR GUILTY PLEA

The United States of America, by and through the undersigned Assistant United States Attorney, and the Defendant (hereinafter referred to as "ENG"), personally and through his attorney, hereby submit this stipulated factual proffer to establish the Defendant's guilt of Counts II, III and IV of the indictment:

### COUNT II
(Cannon Toner Cartridge Theft)

Sometime between 8:00 P.M. on October 14, 1999 and 1:51 P.M. on October 15, 1999 in Hialeah, a rig transporting $270,916.00 of Cannon toner cartridges was stolen. The Cannon Toner Cartridges had been sold by CBM Trading in Cooper City, Florida, and were destined for Merrimack, New Hampshire.

On October 15, 1999, at approximately 1:30 P.M., law enforcement established surveillance of a warehouse located at 1370 West Industrial Avenue in Boynton Beach, Florida, Bay C-115. This warehouse had been rented by an informant at the request and with funds provided by Jose Enrique SANCHEZ (hereinafter referred to as "SANCHEZ") because SANCHEZ was aware that his actions were being scrutinized by law enforcement. At 2:15



P.M., officers conducting surveillance observed several vehicles arrive at said warehouse:

The stolen rig driven by Pablo ANAYA (hereinafter referred to as "ANAYA").

A white Ford Van driven by Jose Alberto MENDEZ (hereinafter referred to as "MENDEZ") with Diorki MEDINA (hereinafter referred to as "MEDINA") riding inside this vehicle as a passenger.

A Ford Explorer driven by Ramon VILLARES (hereinafter referred to as "VILLARES") with Aldo FERNANDEZ (hereinafter referred to as "FERNANDEZ") and Lasandro PEREZ (hereinafter referred to as "PEREZ") riding inside this vehicle as passengers.

Surveillance officers watched as MENDEZ provided directions to ANAYA who was driving the stolen rig to help ANAYA park the stolen rig inside the warehouse. At 3:30 P.M., the officers conducting surveillance saw a White Ford Tempo registered to and driven by Adriano MARTINEZ (hereinafter referred to as "MARTINEZ") park at the warehouse and MARTINEZ exit said vehicle and enter the warehouse.

On October 15, 1999, at approximately 7:15 p.m., surveillance officers observed the stolen rig being driven by MEDINA depart from the warehouse followed by the Ford Explorer driven by VILLARES. The stolen rig was driven to a parking lot located at Hypoluxo Road and Federal Highway in Palm Beach County and abandoned. MEDINA exited the stolen rig after parking the same and entered the Ford Explorer driven by VILLARES. The Ford Explorer was subsequently driven back to the warehouse where both MEDINA and VILLARES exited the Explorer and reentered the warehouse. The Palm Beach County Sheriff's Office recovered the stolen rig shortly thereafter and found the trailer empty and the ignition for the truck had been removed.

On October 15, 1999, at approximately 7:30 P.M., all the before-mentioned subjects departed from the warehouse.

On October 16, 1999, at 12:45 P.M., law enforcement established surveillance at the warehouse located at 1370 West Industrial Avenue in Boynton Beach, Florida. At 1:05 P.M.,

officers conducting surveillance saw a white delivery truck with markings that read "A Plus Storage" driven by MARTINEZ arrive at the warehouse and park inside the same. MARTINEZ subsequently loaded approximately 20% of the stolen Cannon toner cartridges into the "A Plus Storage" delivery truck as payment for the use of the warehouse to store the stolen Cannon toner cartridges. At 2:00 P.M., the white "A Plus Storage" delivery truck driven by MARTINEZ departed from the warehouse and was followed south on the Florida Turnpike. MARTINEZ was on October 16, 1999 at about 3:40 P.M. photographed by officers conducting surveillance offloading stolen Cannon toner cartridges from the "A Plus Storage" delivery truck into a mini-storage warehouse located at A Plus Storage at 12981 SW 137 Avenue, Bay 375 in Miami. SANCHEZ used a credit card issued in his name to rent the "A Plus Storage" delivery truck and the warehouse on October 16, 1999.

On October 16, 1999, at 3:25 P.M., surveillance officers observed a white truck driven by MENDEZ arrive and park outside the warehouse. A Ford Explorer also arrived at the warehouse and parked thereafter. VILLARES, MEDINA, and PEREZ exited the Ford Explorer and entered the warehouse. At 3:50 P.M., an U-Haul truck driven by Eduardo RODRIGUEZ (hereinafter referred to as "RODRIGUEZ") followed by a white Ford van driven by MENDEZ arrived and parked outside the warehouse. At 3:50 P.M., ANAYA driving a white Ford van with red stripes arrived and parked outside the warehouse. Upon parking the Ford van, ANAYA entered the warehouse. At 4:00 P.M., the U-Haul was backed into the warehouse. At 5:00 P.M., the U-Haul driven by RODRIGUEZ followed by the Ford Explorer driven by VILLARES with FERNANDEZ, PEREZ, and MEDINA riding as passengers, a white van driven by ANAYA, and a white van driven by MENDEZ departed the warehouse together. The four vehicles drove from the warehouse at 1370 West Industrial Avenue in Boynton Beach, Florida to a residence located near the intersection of NW 26th Street and NW 30 Avenue in Miami where

at 6:30 P.M. law enforcement approached the stopped vehicles to identify the occupants. ANAYA was exiting the driveway of the residence located at 2980 NW 26 Street when the police were approaching the U-Haul truck and the Ford Explorer. Upon becoming aware of the presence of the police, ANAYA fled in the van from the approaching officers for approximately 10 blocks and jumped from the van and fled the pursuing officers on foot. A K-9 unit was summoned to assist in the search for ANAYA. ANAYA was eventually arrested hiding in the backyard of a residence located at 31st Avenue and 31st Street. The van driven by ANAYA was empty except for a pair of gloves and a shirt officers conducting surveillance had seen ANAYA wearing earlier that day. MENDEZ was found in the area where ANAYA was arrested driving a white Acura. MENDEZ was arrested after officers arresting ANAYA recognized MENDEZ from surveillance conducted earlier in the day. The van driven by MENDEZ was never found. VILLARES, FERNANDEZ, MEDINA, and PEREZ were identified by the police after they were removed from the Ford Explorer. The U-Haul which had been driven by RODRIGUEZ was found to contain 1,386 boxes of the stolen Cannon cartridges in boxes that were clearly marked "Cannon." A contract was found inside the U-Haul that showed the U-Haul had been rented by FERNANDEZ, who had been seated as a passenger inside the Ford Explorer driven by VILLARES. A consent search performed of an apartment at the residence located at 2980 NW 26 Street led to the recovering of approximately 193 boxes of stolen Cannon toner cartridges in boxes marked Cannon from both bedrooms of the apartment.

An informant recorded numerous telephone conversations with SANCHEZ and ENG before and after the police confiscated the stolen Cannon toner cartridges from the Miami apartment and arrested ANAYA, VILLARES, MENDEZ, and RODRIGUEZ. During these recorded telephone calls, both SANCHEZ and ENG evidenced knowledge that the Cannon

toner cartridges were stolen, acknowledged having received a portion (20%) of the stolen merchandise as compensation for permitting the warehouse in Boynton Beach to be used to offload and store the stolen Cannon cartridges, and discussed with the informant the sale of the stolen Cannon cartridges in two parts for $15,000.00 to a lady who paid them for the first delivery with a check.

## COUNT III
### (Household Products Theft)

Sometime between the evening hours of November 6, 1999 and the morning hours of November 7, 1999 at a Marion County, Florida truck stop, Yosmany NUNEZ (hereinafter referred to as "NUNEZ") popped the ignition on a Peterbilt truck and stole the truck and the attached trailer that contained appropriately 46,000 pounds of Clorox products being shipped from Oakland, Georgia to Plant City, Florida. The truck was valued at $25,000.00, the trailer was valued at $18,000.00, and the Clorox products stolen were worth approximately $15,000.00. SANCHEZ used Western Union to wire funds that were used to pay for repairs made to the stolen rig and other expenses.

NUNEZ drove the stolen rig on November 7, 1999 at 8:30 a.m. to a warehouse rented by an informant for ENG located at 3637 NW 19th Street in Fort Lauderdale with Victor CORREA (hereinafter referred to as "CORREA") and Victorino LOPEZ (hereinafter referred to as "LOPEZ") riding inside the cab as passengers. Upon arriving at the warehouse, the Clorox products were offloaded by NUNEZ, CORREA, and LOPEZ from the trailer into the warehouse to store until a buyer could be located for the stolen merchandise. The arrival of the stolen rig and the offloading of the stolen merchandise was witnessed and videotaped by officers conducting surveillance.

On November 8, 1999, between 8:09 p.m. and 9:00 p.m., NUNEZ returned to the

warehouse located at 3637 NW 19th Street in Fort Lauderdale to remove the tractor trailer and abandon the same with the engine running and doors unlocked in the parking lot of the Seminole Indian Tobacco Shop located at 5950 North State Road 7 in Hollywood, Florida. ENG drove NUNEZ to the Exxon gas station at the corner of Sunrise Boulevard and NW 31 Avenue to rendezvous with the informant who then drove NUNEZ to the warehouse. ENG driving a Ford F150 truck and the informant operating his vehicle drove in a tandem with the stolen rig driven by NUNEZ from the area of the warehouse to the parking lot where the tractor trailer was abandoned. NUNEZ subsequently entered the informant's vehicle and the informant's vehicle followed ENG's truck south on State Road 7. Officers conducting surveillance videotaped the events leading to and the abandonment of the stolen rig.

SANCHEZ and ENG encountered difficulty locating a buyer for the stolen household products. Guillermo REYES, a/k/a "Billy" (hereinafter referred to as "REYES") ultimately brokered the sale of the stolen household products to Francisco ORTEGA, a/k/a "Frank" (hereinafter referred to as "ORTEGA").

On November 17, 1999, MARTINEZ and two unidentified males arrived at the warehouse located at 3637 NW 19th Street in Fort Lauderdale driving a 24-foot Ryder truck to load as much of the stolen Clorox products as possible into said truck to transport the same to Bay #125 located at 7661 NW 68th Street in Miami leased by Frank Distributors, a company owned and operated by ORTEGA, pursuant to instructions received from REYES. REYES met the Ryder truck loaded with 2,164 boxes of the stolen household products driven by MARTINEZ accompanied by the two unknown males at this location. The stolen Clorox products were offloaded from the Ryder rental truck into Bay #125.

On November 18, 1999, the FBI approached and received consent to search Bay #125 located at 7661 NW 68th Street from ORTEGA. ORTEGA also consented to a search of his

automobile. Recovered from Bay #125 and a gray cargo van (ORTEGA had four keys in his possession: one that worked the lock on Bay #125 and the other three fit the gray cargo van) were 2,164 boxes of assorted detergents. ORTEGA executed a written waiver of Miranda rights form and admitted that he was to purchase the Clorox products for $10,000.00 from REYES. The price the Clorox products were sold by REYES to ORTEGA caused him to know the same were stolen. ORTEGA had previously purchased stolen merchandise from REYES on four occasions. ORTEGA would receive stolen merchandise from REYES on consignment and split the profits ORTEGA earned from selling the same. The $10,000.00 seized by the FBI on November 18, 1999 from his 1999 Mercedes sport utility vehicle, according to ORTEGA, was the money he owed to REYES as payment for the stolen Clorox products. Also seized by the FBI from ORTEGA's vehicle amongst other items were the shipping documents pertaining to the stolen Clorox products.

## COUNT IV
### (Crayola Crayons Theft)

Sometime between the evening hours of November 25, 1999 and the morning hours of November 26, 1999 in South Miami Dade County, Florida, a truck and the attached trailer that contained appropriately 48 plats of Crayola Crayons being shipped from Lemoyne, Pennsylvania to Rivera Beach, Florida was stolen. The Crayola Crayons stolen were worth approximately $32,901.12. The stolen rig was driven to and stored at a warehouse rented by an informant for ENG located at 3637 NW 19th Street in Fort Lauderdale. An informant learned about the theft of the truck and trailer containing the Crayola Crayons and the storage of the same at the warehouse during a telephone conversation the informant had with SANCHEZ on November 26, 1999.

On December 2, 1999, law enforcement established surveillance at the warehouse

located at 3637 NW 19th Street in Fort Lauderdale. At 12:35 p.m., law enforcement conducting surveillance of the warehouse observed a Ryder truck driven by MARTINEZ and occupied by two unknown males hired as laborers arrive at the warehouse and park inside. At 1:35 p.m., surveillance officers saw the Ryder truck leave the warehouse driven by MARTINEZ with the two laborers riding inside as passengers. This Ryder truck was surveilled to a warehouse located at 1773 NW 21st Street in Miami that stores merchandise for D'eme Imports which is owned and operated by Nemesio Gonzalez. At approximately 2:10 p.m., surveillance officers witnessed and videotape recorded the offloading of the packages of Crayola Crayons from the Ryder truck into the D'eme Imports warehouse. During the offloading of the Crayola Crayons, a red Mustang driven by NUNEZ with SANCHEZ as a passenger arrived at the D'eme Imports warehouse. NUNEZ and SANCHEZ exited the Mustang and proceeded to the Ryder truck where officers surveilled them talking to MARTINEZ. At 4:45 p.m., officers conducting surveillance observed Nestor G. ALVAREZ (hereinafter referred to as "ALVAREZ") and MARTINEZ enter the Ryder truck with MARTINEZ sitting behind the steering wheel and ALVAREZ sitting in the passenger's seat. The Ryder truck was followed by surveillance agents to the Ryder rental center located at 3005 NW 87 Avenue in Miami. ALVAREZ and MARTINEZ waited at the Ryder rental center until they saw a red Mustang driven by NUNEZ with SANCHEZ inside the Mustang as the passenger. Aquilino Dimitri Alonso arrived thereafter driving a GEO Prism. Officers conducting surveillance watched these five men meet and converse with one another. Law enforcement subsequently approached these five men and conducted separate interviews of each person. All five men made exculpatory statements. SANCHEZ denied knowing any of the other four individuals he had earlier been seen conversing with by the surveillance officers. A consent search conducted of NUNEZ' red Mustang led to the seizure by the FBI of $4,642.00 in United States currency from underneath

the driver's seat.

During telephone conversations recorded by the informant on December 1, 1999, December 2, 1999, and December 3, 1999 with SANCHEZ and ENG, the informant was able to elicit comments wherein these defendants admitted to selling each package of Crayola Crayons for $2.00, that MARTINEZ was the person designated to pick-up and transport the Crayola Crayons to the D'eme Imports warehouse, that the entire shipment of Crayola Crayons was not delivered but the delivery would be completed the next day, and a problem with law enforcement occurred on December 2, 1999 after the Crayola Crayons were delivered. SANCHEZ subsequently admitted to law enforcement that the $4,642.00 seized by the FBI represented proceeds from the sale of the stolen Crayola Crayons after being advised of his Miranda rights and waiving the same.

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

Date: 3/30/06

By: *[signature]*
DONALD F. CHASE, II
ASSISTANT UNITED STATES ATTORNEY

Date: 3/30/04

By: *[signature]*
CARL KAFKA, ESQ.
ATTORNEY FOR THE DEFENDANT

Date: 3/30/04

By: *[signature]*
ISMAEL ENG
DEFENDANT

INTERPRETED BY *[signature]*   3-31-06